1

2

3

4

5

6

7

8

9

10

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICIA JANE SCHILLING,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No.  1:21-cv-01268-SAB<br><br>ORDER DENYING PLAINTIFF'S SOCIAL SECURITY APPEAL<br><br>(ECF Nos. 14, 16) |

**I.**

**INTRODUCTION**

Plaintiff Patricia Jane Schilling[1] ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her concurrently submitted applications for Social Security benefits pursuant to Title II and Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument, to Magistrate Judge Stanley A. Boone.[2]  For the reasons set

---

[1] Formerly Patricia Jane Massey.

[2]  The parties have consented to the jurisdiction of the United States Magistrate Judge and this action has been assigned to Magistrate Judge Stanley A. Boone for all purposes.  (ECF Nos. 6, 8, 9.)

1  forth below, Plaintiff's appeal shall be denied.

2  **II.**

3  **BACKGROUND**[3]

4      As relevant to the longitudinal record and considerations under the rebuttable presumption

5  of continuing nondisability, the Court notes Plaintiff filed two prior separate claims which were

6  denied.  Plaintiff originally filed a Title II claim on January 3, 2012, alleging disability beginning

7  September 18, 2010.  (See Admin. Rec. ("AR") 120, ECF No. 10-1.)  That claim was initially

8  denied on July 8, 2012, and upon reconsideration on January 24, 2013.  (Id.)  Plaintiff appeared

9  for a hearing before Administrative Law Judge ("ALJ") Nancy Lisewski on August 20, 2013.

10  (AR 120–37.)  The ALJ determined Plaintiff had the following severe impairments: migraines,

11  obesity, hypertension, mild cervical spinal stenosis, right ulnar neuropathy, joint pain, borderline

12  intellectual functioning, depressive disorder not otherwise specified, generalized anxiety disorder,

13  and posttraumatic stress disorder ("PTSD").  (AR 123.)  The ALJ found Plaintiff's impairments

14  resulted in only moderate functional limitations—largely because Plaintiff's activities included

15  caring for her three children (ages six, nine, and eleven) as a "stay-at-home mom," preparing

16  meals, vacuuming, folding laundry, washing dishes, sweeping, driving, shopping, managing

17  finances, "social networking "all day everyday [sic]," attending and singing at church,

18  cheerleading coaching, making jewelry for herself and her kids, using the computer, reading, and

19  watching television, and the medical record indicated Plaintiff had no episodes of decomposition

20  and did not require any inpatient mental health treatment during the alleged period of disability.

21  (AR 123–25.)  However, the ALJ reached an RFC determination that permitted only simple,

22  unskilled, repetitive, one-to-two step tasks and instructions, sedentary work with multiple

23  limitations related to lifting/carrying, standing/walking, postural, gripping, and overhead

24  reaching, as well as situational/environmental, and social limitations.  (AR 126.)  The ALJ denied

25  this claim on September 27, 2013.  (AR 117–34.)

26      Next, Plaintiff protectively filed an application for Supplemental Security Income ("SSI")

27
28  [3] For ease of reference, the Court will refer to the administrative record by the pagination provided by the Commissioner and as referred to by the parties, and not the ECF pagination.  However, the Court will refer to the parties' briefings by their ECF pagination.

1    under Title XVI on February 27, 2014, alleging disability beginning September 18, 2010.  (See

2    AR 138.)  This claim was denied initially on October 14, 2014, and upon reconsideration on May

3    14, 2015.  (Id.)  A videoconference hearing was held before ALJ Lisewski on March 13, 2017.

4    (Id.)  This time, Plaintiff was assessed with the severe impairments of chronic pain, diabetes,

5    PTSD, depression, degenerative disc disease, fibromyalgia, asthma, chronic obstructive

6    pulmonary disease ("COPD"), sleep apnea, and obesity, and the ALJ determined Plaintiff's

7    impairments resulted in mild to moderate limitations in the criteria B functional areas.  (AR 140–

8    41.)  Plaintiff's RFC determination also differed, in that the ALJ concluded Plaintiff was able to

9    perform simple and routine light work, with frequent postural and balancing limitations,

10   occasional contact with coworkers and supervisors and no contact with the public.  (AR 142.)

11   The ALJ denied this claim on May 3, 2017 (AR 135–54); the Appeal Council denied review on

12   May 23, 2018 (AR 155–60).  On July 11, 2018, Plaintiff appealed the denial of her SSI claim to

13   the Eastern District Court of California.  (See AR 164–80); Massey v. Saul, No. 1:18-cv-00937-

14   JLT, 2019 WL 4464032 (E.D. Cal. Sept. 18, 2019).  In that appeal, Plaintiff challenged the ALJ's

15   decision based on the ALJ's evaluation of the medical opinions (specifically the ALJ's rejection

16   of the opinions of Dr. Rinehart and Ms. Powell).  Massey, 2019 WL 4464032, at *7.  The district

17   court found the ALJ sufficiently identified specific and legitimate reasons for rejecting the

18   limitations identified by Dr. Rinehard and Ms. Powell—namely, the opinions were inconsistent

19   with the medical record and other physician's opinions—and affirmed the decision of the

20   Commissioner.  Id. at *9–11.  Judgment was entered against Plaintiff on September 18, 2019.  Id.

21   at *11.

22       Meanwhile, on January 22, 2019, Plaintiff concurrently filed the instant applications for

23   Social Security benefits under Title II and SSI under Title XVI, alleging disability beginning

24   January 1, 2019.  (See AR 15.)  Plaintiff's claims were initially denied on May 29, 2019, and

25   denied upon reconsideration on September 25, 2019.  (AR 183–214, 234–69.)  On October 27,

26   2020, Plaintiff, represented by counsel Steven Rosales,[4] appeared via telephonic conference, for

27

28   _____

[4] Mr. Rosales continues to represent Plaintiff in this instant appeal.  (See ECF No. 14.)  It appears Mr. Rosales also represented Plaintiff on her 2014 SSI claim.  See Massey, 2019 WL 4464032.

1    an administrative hearing before ALJ Matthew C. Kawalek (hereinafter, the "ALJ").  (AR 88–

2    116.)  Vocational expert ("VE") Bruce Magnuson also testified at the hearing.  On December 9,

3    2020, the ALJ issued a decision denying benefits.  (AR 12–34.)  On June 24, 2021, the Appeals

4    Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the

5    Commissioner.  (AR 1–6.)

6          Plaintiff initiated the instant action in federal court on August 20, 2021, and seeks judicial

7    review of the denial of her applications for benefits.  (ECF No. 1.)  The Commissioner lodged the

8    administrative record on March 7, 2022.  (ECF No. 10.)  On May 23, 2022, Plaintiff filed an

9    opening brief.  (ECF No. 14.)  On July 14, 2022, Defendant filed a brief in opposition.  (ECF No.

10    16.)  No reply brief was filed and the matter was deemed submitted.

## III.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[5] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining if a claimant is disabled.  20 C.F.R. § 404.1520;[6] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

---

[5] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

[6] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.  Accordingly, while Plaintiff seeks both disability and SSI benefits in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes the cases and regulations cited herein are applicable to the instant matter.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled.  If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e); Nowden v. Berryhill, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, available at 1996 WL 374184 (Jul. 2, 1996).[7]  A determination of RFC is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. § 404.1527(d)(2) (RFC is not a medical opinion); 20 C.F.R. § 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d

---

[7] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

1044, 1049 (9th Cir. 2001).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), or call a VE.  See 20 C.F.R. § 404 Subpt. P, App. 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.' " Ford, 950 F.3d at 1149 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).

**B.    Standard of Review**

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001). Further, the Court's review of the Commissioner's decision is a limited one; the Court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); Biestek v. Berryhill, 139 S. Ct. 1148, 1153 (2019).  "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart (Thomas), 278 F.3d 947, 954 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)); see also Dickinson v. Zurko, 527 U.S. 150, 153 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek, 139 S. Ct. at 1154.  Rather, "[s]ubstantial evidence means more than a scintilla, but less than a preponderance; it is an extremely deferential standard."  Thomas v. CalPortland Co. (CalPortland), 993 F.3d 1204, 1208 (9th Cir. 2021) (internal quotations and citations omitted); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  Even if the ALJ has erred, the Court may not reverse the ALJ's decision where the error is harmless.  Stout,

454 F.3d at 1055–56.  Moreover, the burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  Nor may the Court affirm the ALJ on a ground upon which he did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  Nonetheless, it is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld."  Ford, 950 F.3d at 1154 (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

## IV.

### THE ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

As an initial matter, the ALJ noted Plaintiff's May 3, 2017 final administrative decision and finding of nondisabilty, and considered whether there was any new and material evidence relating to the prior findings, or change in the law, regulations or rulings affecting the findings or the method for arriving at the findings so as to rebut the presumption of continuing nondisability.  Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988).  The ALJ determined there was a showing of changed circumstances and the presumption of continuing nondisability was rebutted, based on Plaintiff's evidence of a new surgically implanted spine stimulator and presentation of new and/or worsening symptoms.  (AR 15–16.)

Next, the ALJ conducted the five-step disability analysis and made the following findings of fact and conclusions of law as of the date of the decision, December 9, 2020 (AR 18–28):

At step one, the ALJ determined Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2024, and Plaintiff has not engaged in substantial gainful activity since January 1, 2019, the alleged onset date.  (AR 18 (citing 20 C.F.R. §§

1   404.1571 et seq.; 20 C.F.R. §§ 416.971 et seq.).)

2          At step two, the ALJ determined Plaintiff has the following severe impairments:

3   degenerative disc disease, spondylosis, C5-6 disc bulge and osteophytes of the cervical spine with

4   radiculopathy, degenerative disc disease and disc protrusions of the lumbar spine with

5   radiculopathy, degenerative disc disease of the thoracic spine, sacroiliitis, COPD with ongoing

6   tobacco abuse and nicotine dependence, diabetes mellitus with diabetic neuropathy, rheumatoid

7   arthritis, obesity, an affective disorder (variably called depression, major depressive disorder,

8   bipolar disorder, or mood disorder), and anxiety disorder.  (AR 18–19 (citing 20 C.F.R. §§

9   404.1520(c), 416.920(c)).)

10         The ALJ also noted Plaintiff was diagnosed with sleep apnea, hyperlipidemia, multiple

11  sclerosis, acute asthmatic bronchitis, periapical abscess, and acute upper respiratory infection, but

12  these impairments are non-severe and there is no evidence of any ongoing functional limitations

13  from these impairments due to the limited nature of the complaints, the good response to

14  treatment, or the lack of any evidence of any functional limitations for any 12-month period of

15  time.  (AR 19 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).)  However, the ALJ noted he

16  considered any potential effects these impairments might cause or contribute to in the RFC.  (Id.

17  (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).)

18         Similarly, the ALJ noted Plaintiff was diagnosed with fibromyalgia, but that Plaintiff did

19  not satisfy either test—the 1990 American College or Rheumatology ("ACR") Criteria, or the

20  2010 ACR Preliminary Diagnostic Criteria—as required under SSR 12-2p, available at 2012 WL

21  3104869 (Jul. 25, 2012), to establish fibromyalgia; therefore, the ALJ concluded Plaintiff's

22  fibromyalgia diagnosis was not a medically determinable impairment under SSR 12-2p, but he

23  considered any pain that might be attributable to it, in conjunction with Plaintiff's medically

24  determinable severe impairments.  (AR 19.)

25         The ALJ also noted Plaintiff was "diagnosed" with a number of symptoms, including

26  migraines, cervicalgia, chronic low back pain, neck pain, provisional PTSD, provisional

27  personality disorder NOS, and upper abdominal pain; however, he determined these symptoms on

28  their own do not amount to medically determinable impairments, but nevertheless were

1    considered in evaluating the severity of Plaintiff's medically determinable impairments.  (Id.

2    (citing 20 C.F.R. §§ 404.1521, 416.921).)

3        At step three, the ALJ determined Plaintiff does not have an impairment or combination of

4    impairments that meets or medically equals the severity of one of the listed impairments in 20

5    C.F.R. Part 404, Subpart P, Appendix 1 (AR 19–22 (citing 20 C.F.R. §§ 404.1520(d), 404.1525,

6    404.1526, 416.920(d), 416.925, 416.926).)

7        In reaching this decision, the ALJ considered Plaintiff's severe physical impairments

8    under the listings, including Listing 1.04 (degenerative disc disease of the cervical, thoracic, and

9    lumbar spine/spine disc protrusions, osteophytes, radiculopathy, and sacroiliitis), 3.02 (COPD),

10   11.14 (diabetic neuropathy), and 14.09 (rheumatoid arthritis).  However, radiographic images of

11   Plaintiff's lumbar, thoracic, and cervical spine did not show evidence of a compromised nerve

12   root; Plaintiff demonstrated full upper and lower extremity strength, walked with a normal gait,

13   and showed no focal motor deficits; and her respiratory workup did not show findings near listing

14   levels.  The ALJ also considered Plaintiff's obesity and diabetes mellitus in his medical

15   equivalence determination, and as to their effects on Plaintiff's functional limitations.

16       The ALJ also considered Plaintiff's mental impairments, and determined they did not

17   meet or medically equal the criteria of Listings 12.04 (depressive, bipolar and related disorders)

18   or 12.06 (anxiety and obsessive-compulsive disorders).  More specifically, the ALJ determined

19   Plaintiff does not satisfy the paragraph B criteria because her limitations in the four broad

20   functional areas are all of moderate severity.  The ALJ also considered the paragraph C criteria

21   and determined the record does not establish that Plaintiff has only marginal adjustment.

22       Before proceeding to step four, the ALJ determined Plaintiff has the RFC to perform

23        **a reduced range of light work as defined in 20 CFR 404.1567(b)
24        and 416.967(b) meaning the claimant can occasionally lift/carry
         20 pounds and frequently lift/carry 10 pounds.  She can stand
25        and/or walk 4 hours and sit 6 hours of an 8-hour workday.  She
         can occasionally operate foot controls with the bilateral lower
26        extremities.  The claimant can never climb ladders, ropes, or
         scaffolds, and she can occasionally balance, stoop, kneel,
27        crouch, crawl, or climb ramps and stairs.  She can occasionally
         reach overhead with the bilateral upper extremities, and she
28        can frequently reach in all other directions, handle, finger, feel,
         or operate hand controls with the bilateral upper extremities.**

9

> **She can tolerate no more than frequent exposure to extreme cold, vibration, or pulmonary irritants, and she can have no exposure to hazards, including uneven terrain or unprotected heights.   Mentally,  she  is  limited  to  understanding, remembering, carrying out, and maintaining attention and concentration on no more than simple tasks and instructions, defined specifically as those job duties that can be learned in up to 30 days' time.  She can sustain only ordinary routines and make no more than simple, work-related decisions.  She can tolerate no more than occasional interaction with coworkers, supervisors, and the general public.**

(AR 22–26 (citing 20 C.F.R. §§ 404.1529, 416.929, and SSR 16-3p, <u>available at</u> 2017 WL 5180304 (Oct. 25, 2017)) (emphasis in original).)

At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  (AR 26 (citing 20 C.F.R. §§ 404.1565, 416.965).)

At step five, the ALJ noted Plaintiff was born on June 13, 1982, and was 36 years old (which is defined as a younger individual age 18–49) on the alleged disability onset date; Plaintiff has a limited education; and transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not Plaintiff has transferrable job skills.  (AR 26–27 (citing 20 C.F.R. §§ 404.1563, 416.963, 404.1564, 416.964; SSR 82-41; 20 C.F.R. Part 404, Subpart P, Appendix 2).)   Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, 416.969(a)), such as:

- <u>Assembler, Small Products</u> (Dictionary of Occupational Titles ("DOT") 706.684-022), a light work position with an SVP of 2, and approximately 159,642 jobs in national economy (following a 50% erosion to limit the available jobs to bench assembly only);

- <u>Routing Clerk</u> (DOT 222.687-022), a light work position with an SVP of 2, and approximately 29,034 jobs in national economy (following a 50% erosion to eliminate those routing clerk jobs that would require more than 4 hours of standing/walking); and

- <u>Document Preparer</u> (DOT 249.587-018), a light work position with an SVP of 2, and approximately 19,078 jobs in national economy.

(AR 27–28.)   With respect to the identified jobs, the ALJ noted the VE's testimony was

1  consistent with the DOT and, with respect to the specified RFC limitations, the VE's testimony

2  was based on his experience.  (AR 28.)

3       Therefore, the ALJ found Plaintiff has not been under a disability, as defined in the Social

4  Security Act, from January 1, 2019 through December 9, 2020 (the date of decision).  (AR 28

5  (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).)

6                                        **V.**

7                                  **DISCUSSION**

8       Plaintiff asserts two challenges on appeal: (1) the ALJ impermissibly rejected her

9  subjective symptom testimony; and (2) the ALJ impermissibly rejected the lay witness testimony.

10 (ECF No. 14 at 6–22.)

11      **A.     Plaintiff's Subjective Symptom Testimony**

12      Plaintiff argues the ALJ did not provide clear and convincing reasons to reject her

13 testimony.

14      1.     The ALJ's Evaluation of Plaintiff's Testimony

15      The ALJ discounted Plaintiff's testimony because he determined that the evidence

16 supports her alleged impairments, but not the alleged severity of such impairments.  (AR 26.)  In

17 reaching this determination, the ALJ explained:

18          The claimant testified that she was able to continue working
            through part of 2019, including moving heavy (50 pound) tables in
19          order to set up displays of hair accessories for sale.  Her earnings
            records show that the claimant earned significant income in 2019,
20          indicating that she was not as limited as alleged at the hearing and
            retained the capacity to perform some work that involved
21          significant lifting and carrying (Ex. C7D).  Moreover, while her
            treatment records were remarkable for a spinal stimulator implanted
22          in early 2019, follow up records indicate that the device led to a full
            resolution of her lumbar spine and lower extremity pain (Ex. C1F/2,
23          4, 7).  While the claimant's records show that she treated for a
            number of other impairments, including rheumatoid arthritis and
24          neuropathy, her physical examinations showed consistently intact
            musculoskeletal and neurological findings.  The claimant walked
25          with a normal gait, showed full upper and lower extremity strength,
            negative straight leg raise testing, and no focal motor deficits.
26          Therefore, I find that the claimant retained the ability to perform the
            work outlined in her residual functional capacity (Exs. C2F/2;
27          C7F/20; C9F/5; C10F/10; C11F/16).

28

                                          11

1 | (Id. (citing SSR 16-3p).)

2 |     2.    Legal Standard[8]

3 |     The ALJ is responsible for determining credibility,[9] resolving conflicts in medical

4 | testimony, and resolving ambiguities.  Andrews, 53 F.3d at 1039.  A claimant's statements of

5 | pain or other symptoms are not conclusive evidence of a physical or mental impairment or

6 | disability.  42 U.S.C. § 423(d)(5)(A); SSR 16-3p; see also Orn, 495 F.3d at 635 ("An ALJ is not

7 | required to believe every allegation of disabling pain or other non-exertional impairment.").

8 |     Rather, an ALJ performs a two-step analysis to determine whether a claimant's testimony

9 | regarding subjective pain or symptoms is credible.  See Garrison v. Colvin, 759 F.3d 995, 1014

10 | (9th Cir. 2014); Smolen, 80 F.3d at 1281; SSR 16-3p, at *3.  First, the claimant must produce

11 | objective medical evidence of an impairment that could reasonably be expected to produce some

12 | degree of the symptom or pain alleged.  Garrison, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82.

13 | If the claimant satisfies the first step and there is no evidence of malingering, "the ALJ may reject

14 | the claimant's testimony about the severity of those symptoms only by providing specific, clear,

15 | and convincing reasons for doing so."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020)

16 | (citations omitted).

17 |
18 |         If an ALJ finds that a claimant's testimony relating to the intensity of his pain and other limitations is unreliable, the ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive.  The ALJ must specifically identify what testimony is
19 | credible and what testimony undermines the claimant's complaints. In this regard, questions of credibility and resolutions of conflicts in
20 | the testimony are functions solely of the Secretary.

21 | Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009) (quotation omitted); see also Lambert, 980

22 | F.3d at 1277.

23 |     Subjective pain testimony "cannot be rejected on the sole ground that it is not fully

24 |

25 | [8]  Although Defendant emphasizes disagreement with the "clear and convincing reasons" standard in order to preserve the issue for future appeals, Defendant acknowledges it is the applicable standard for weighing credibility in
26 | the Ninth Circuit.  (ECF No. 16 at 5 n.3.)

27 | [9] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related
28 | activities."  SSR 16-3p, at *1-2.

corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects."  Burch, 400 F.3d at 680–81; Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).  The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other relevant evidence included in the individual's administrative record.  SSR 16-3p, at *5.

Additional factors an ALJ may consider include the location, duration, and frequency of the pain or symptoms; factors that cause or aggravate the symptoms; the type, dosage, effectiveness or side effects of any medication; other measures or treatment used for relief; conflicts between the claimant's testimony and the claimant's conduct—such as daily activities, work record, or an unexplained failure to pursue or follow treatment—as well as ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, internal contradictions in the claimant's statements and testimony, and other testimony by the claimant that appears less than candid.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014); Tommasetti v. Astrue, 533 F.3d 1035, 1039  (9th Cir. 2008); Lingenfelter v. Astrue, 504 F.3d 1028, 1040 (9th Cir. 2007); Smolen, 80 F.3d at 1284.

Finally, so long as substantial evidence supports the ALJ's assessment of a claimant's subjective complaint, the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959.

3.    Analysis

In this case, there is no dispute that Plaintiff had the severe impairments of migraines, obesity, hypertension, mild cervical spinal stenosis, right ulnar neuropathy, joint pain, borderline intellectual functioning, depressive disorder not otherwise specified, generalized anxiety disorder, and PTSD.[10]  (AR 123.)  As a result, the ALJ was required to make a credibility finding as to

---

[10] Notably, Plaintiff does not challenge the ALJ's determination at steps two and three with respect to which of Plaintiff's purported impairments were deemed "severe" and "not severe"; nor does Plaintiff challenge the ALJ's finding that Plaintiff did not meet or equal any Listing; that Plaintiff did not meet the paragraph B or C criteria; or the ALJ's evaluation of the medical opinion evidence.  Indeed, other than some limited findings with respect to the medical record as asserted in her briefing, Plaintiff generally stipulated that the ALJ fairly and accurately summarized the medical evidence of record.  (ECF No. 14 at 4.)  As such, any challenges to these particular issues are deemed waived.  Lewis, 236 F.3d at 517 n.13; see also Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th

13

Plaintiff's own testimony.  Valentine, 574 F.3d at 693; Lambert, 980 F.3d at 1277.  Because the ALJ made no finding that Plaintiff was malingering, he was required to give clear and convincing reasons as to why he did not find Plaintiff's subjective contentions about his limitations to be persuasive.  Id.

### a.   Allegations Not Substantiated by the Objective Medical Record

Here, the ALJ found the medical records do not support the alleged severity of Plaintiff's impairments.  The ALJ noted radiographic images of Plaintiff's lumbar, thoracic and cervical spine did not show evidence of a compromised nerve root; Plaintiff's treatment records indicate consistently intact musculoskeletal and neurological findings, that Plaintiff walked with a normal gain, showed full upper and lower extremity strength, negative straight leg raise testing, and no focal motor deficits.  The ALJ also found follow up medical records after implantation of Plaintiff's spinal stimulator show a full resolution of her lumbar spine and lower extremity pain. (AR 20, 26.)  As to Plaintiff's mental impairments, the ALJ found only moderate limitations based on mental status reports that generally showed no serious deficits in long-term memory, short-term memory, insight, or judgment; mental status examinations that showed intact thought process, full orientation, fair to good judgment and insight, understanding of her mental condition and the reason for medication, and intact cognition; Plaintiff's activities of daily living ("ADLs") demonstrated a basic level of understanding, remembering, and applying information; and Plaintiff generally interacted normally with her treating practitioners and was noted to be pleasant, cooperative, and in no distress.  (AR 21.)

Plaintiff acknowledges the ALJ discussed the objective medical evidence, but she argues that a lack of objective medical evidence to fully corroborate the alleged severity of pain, alone, is insufficient to warrant rejecting subjective symptom testimony.  (ECF No. 14 at 10–11.)  While a lack of objective medical evidence is a proper factor the ALJ may consider in weighing a claimant's testimony, it cannot form the *sole* basis presented by the ALJ for rejecting pain testimony.  See Vertigan, 260 F.3d at 1049 ("The fact that a claimant's testimony is not fully

---

Cir. 2003) (stating court "will not consider any claims that were not actually argued in appellant's opening brief" and will only "review … issues which are argued specifically and distinctly in a party's opening brief.").

corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it."); see also 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."). Rather, where a claimant's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide an additional reason for discounting the testimony. See Burch, 400 F.3d at 680–81; see also Stobie v. Berryhill, 690 Fed. App'x 910, 911 (9th Cir. 2017) (finding ALJ gave two specific and legitimate clear and convincing reasons for rejecting symptom testimony: (1) insufficient objective medical evidence to establish disability during the insured period and (2) symptom testimony conflicted with the objective medical evidence). Nonetheless, the Court notes Ninth Circuit caselaw has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records, deeming the latter sufficient on its own to meet the clear and convincing standard. See Hairston v. Saul, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160 (9th Cir. 2008) (affirming ALJ's determination claimant's testimony was "not entirely credible" based on contradictions with medical opinion)) ("[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."); Woods v. Comm'r of Soc. Sec. (Woods I), No. 1:20-cv-01110-SAB, 2022 WL 1524772, at *10 n.4 (E.D. Cal. May 13, 2022) ("While a *lack* of objective medical evidence may not be the sole basis for rejection of symptom testimony, inconsistency with the medical evidence or medical opinions can be sufficient.") (emphasis in original).

In light of the foregoing authorities, the Court agrees with Plaintiff that a mere lack of corroborating objective medical evidence, alone, would not support an adverse credibility determination. However, the Court finds the ALJ has provided sufficient additional reasons to discount Plaintiff's testimony, as discussed herein.

**b.     Conservative Treatment/Failure to Pursue Treatment**

The ALJ additionally found Plaintiff's symptom allegations were not as limiting as she

generally alleged because the record reflects Plaintiff "was counselled on conservative treatment measure[s], including quitting smoking, eating healthier foods, and increasing physical activity." (AR 24 (citing AR 440).)   Evidence that a claimant's medical treatment was relatively conservative may properly be considered in evaluating a claimant's subjective complaints.   See Tommasetti, 533 F.3d at 1039–40; Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.") (citation omitted).   "Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006).  Further, "[t]he ALJ is permitted to consider lack of treatment in his credibility determination."  Burch, 400 F.3d at 681; see also Molina v. Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012), superseded by regulation on other grounds (claimant's failure to assert a good reason for not seeking treatment can cast doubt on the sincerity of the claimant's pain testimony, as can a failure to seek psychiatric treatment until after the claimant applies for disability benefits); Stenberg v. Comm'r Soc. Sec. Admin., 303 Fed. App'x 550, 552 (9th Cir. 2008) (finding noncompliance with recommended treatments, such as attending only half of scheduled therapies and refusing psychological counseling and continued physical therapy, constituted substantial evidence in support of finding the claimant was not entirely credible).

Here, the ALJ found Plaintiff's use of an inhaler appeared to help manage her COPD and respiratory impairments.   Warre, 439 F.3d at 1006.   Similarly, the ALJ noted therapy and medications appeared to treat Plaintiff's mental symptoms.  (AR 23–24.)  And the ALJ noted Plaintiff was counseled on certain treatments including quitting smoking and healthy diet and exercise.  (AR 24.)  These conservative treatment options appear to support he ALJ's finding that Plaintiff's overall treatment plan was conservative in nature.   Tommasetti, 533 F.3d at 1039–40; Parra, 481 F.3d at 751.   Plaintiff challenges the ALJ's characterization of her treatment as "conservative," where she had a spinal cord stimulator surgically implanted, she had a laminectomy, she had a series of epidural injections, and she was prescribed narcotic medication. (ECF No. 14 at 12–13.)  With respect to Plaintiff's spinal cord implant, the Court acknowledges

surgery is generally not considered a "conservative" treatment.  However, courts have reached varying conclusions based on the longitudinal records of each particular case as to whether a treatment plan, on whole, may be considered "conservative."  Compare, e.g., Walter v. Astrue, No. EDCV 09-1569 AGR, 2011 WL 1326529, at *3 (C.D. Cal. Apr. 6, 2011) (ALJ permissibly discredited claimant's allegations based on conservative treatment consisting of Vicodin, physical therapy, and an injection) with Revels v. Berryhill, 874 F.3d 648, 667 (9th Cir. 2017) ("doubting" that epidural steroid shots qualified as "conservative" medical treatment for fibromyalgia).  Thus, the fact that Plaintiff has an implant and received injections for pain does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative.  See Agatucci v. Berryhill, 721 Fed. App'x 614, 618 (9th Cir. 2017) ("We uphold [the] ALJ's rational interpretation that, because [plaintiff's] condition did not necessitate surgery, her symptoms were not as debilitating as she alleged.") (citing Parra, 481 F.3d at 751); see also Martin v. Colvin, No. 1:15-cv-01678-SKO, 2017 WL 615196, at *10 (E.D. Cal. Feb. 14, 2017) ("[T]he fact that Plaintiff has been prescribed narcotic medication or received injections does not negate the reasonableness of the ALJ's finding that Plaintiff's treatment as a whole was conservative, particularly when undertaken in addition to other, less invasive treatment methods."); Zaldana v. Colvin, No. CV 13-7820 RNB, 2014 WL 4929023, at *2 (C.D. Cal. Oct. 1, 2014) (finding that evidence of treatment including Tramadol, ibuprofen, and "multiple steroid injections" was a legally sufficient reason on which the ALJ could properly rely in support of his adverse credibility determination).  Here, the Court finds the ALJ's characterization of Plaintiff's treatment on whole as conservative was not unreasonable, where the majority of Plaintiff's continued treatment for her multiple impairments over multiple years appears to consist largely of medications and therapy.  To the extent Plaintiff has suggested an alternative interpretation of the evidence, this is not sufficient to establish reversible error and the Court "will not engage in second-guessing."  Thomas, 278 F.3d at 959; Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).

Furthermore, the ALJ also noted Plaintiff was counseled on certain treatments including quitting smoking and healthy diet and exercise—this appears particularly relevant to Plaintiff's

alleged limitations arising from her COPD, spirometry and respiratory conditions, and the functional effects of her morbid obesity in combination with other impairments—but that Plaintiff continued to smoke tobacco throughout the period at issue.  (AR 24.)  As noted, the failure to pursue prescribed treatments is also a relevant consideration to the ALJ's credibility determination.  Molina, 674 F.3d at 1114; Stenberg, 303 Fed. App'x at 552; see also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) ("unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment . . . can cast doubt on the sincerity of the claimant's pain testimony."); Burch, 400 F.3d at 681 (affirming ALJ discrediting testimony due to lack of consistent treatment; commenting on claimant's failure to attend physical therapy, chiropractor, or do home exercises, "[t]hat [the claimant]'s pain was 'not severe enough to motivate [her] to seek [these forms of] treatment, even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain.") (internal citations omitted).  While Plaintiff disputes the ALJ's overall characterization of her treatments as "conservative," she does not address the ALJ's consideration of her failure to adhere to prescribed treatment plans.  Thus, the Court finds each of these considerations constitutes a clear and convincing reason in support of the ALJ's credibility determination.

> ### c.    Activities of Daily Living ("ADLs")

Plaintiff challenges any adverse credibility finding based on her purported ADLs.  (ECF No. 14 at 14–15.)  Plaintiff argues the ALJ's consideration of her ADLs was inappropriate because they did not contradict her testimony or "meet the threshold for transferrable work skills."  (Id. at 15.)

However, the Ninth Circuit has held that "[e]ngaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination."  Ghanim, 763 F.3d at 1165.  In order to reach such a conclusion, the Ninth Circuit generally requires the ALJ to describe the daily activities, note whether the claimant performs them alone or with assistance, and evaluate whether the nature of each activity "comprise[s] a 'substantial' portion of [the claimant's] day, or [is] 'transferrable' to a work environment."  Id.  However, even where a claimant's activities "suggest some difficulty functioning, they may [still]

be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Molina, 674 F.3d at 1112–13 (citing Turner v. Comm'r Soc. Sec. Admin., 613 F.3d 1217, 1225 (9th Cir. 2010); Valentine, 574 F.3d at 693).

In Valentine v. Commissioner of Social Security Administration, for example, the ALJ determined the claimant "demonstrated better abilities than he acknowledged in his written statements and testimony" and that his "non-work activities … are inconsistent with the degree of impairment he alleges." Valentine, 574 F.3d at 693. The ALJ further remarked on the claimant's ADLs, but acknowledged these activities did not suggest that the claimant could return to his old job. Id. Instead, the ALJ indicated she thought the ADLs suggested the claimant's later claims about the severity of his limitations were exaggerated. Id. The Ninth Circuit found the ALJ provided clear and convincing reasons to reject the claimant's subjective complaint testimony because she identified evidence that directly contradicted the claimant's claims that his PTSD was so severe that he was unable to work, including contentions about how debilitating his fatigue was. Id.

Similarly, the ALJ noted Plaintiff reported driving, performing normal necessary household activities such as preparing meals and cleaning. (AR 21, 23.) Importantly, the ALJ noted Plaintiff testified to working through August 2019 in making and selling hair accessories at fairs and markets—and that this activity included setting up tables weighing around 50 pounds, which Plaintiff had to lift and maneuver to set up her displays. This finding alone is sufficient to establish an inconsistency with the alleged severity of Plaintiff's symptoms. Molina, 674 F.3d at 1112–13; Valentine, 574 F.3d at 693. However, the ALJ also noted that this testimony conflicted with Plaintiff's prior allegations that she stopped working in January 2019 due to her impairments. In light of the aforementioned authorities, the Court finds the ALJ's consideration of Plaintiff's ADLs constitutes a clear and convincing reason in support of his credibility determination.

**d.     Inconsistencies with the Medical Opinion Evidence**

In addition, the Court notes the ALJ determined Plaintiff's allegations and contentions regarding the nature and severity of her impairment-related symptoms and functional limitations

were only partially reliable because they were not fully supported by the medical opinions which the ALJ found persuasive.  (<u>See</u> AR 25–26.)  As the Court has noted, a finding that a claimant's symptom allegations are inconsistent with the medical opinions constitutes a clear and convincing reason for rejecting the claimant's subjective testimony.  <u>Hairston</u>, 827 Fed. App'x at 773; <u>Carmickle</u>, 533 F.3d at 1160; <u>Woods I</u>, 2022 WL 1524772, at *10 n.4.

Here, the ALJ found the opinion of Dr. M. Mazuryk—who opined Plaintiff could perform modified light work, with additional postural maneuver, foot control, overhead reaching, and avoidance of exposure to hazards—persuasive because it is somewhat consistent with the overall weight of the evidence, though the ALJ ultimately determined the medical record warranted even greater limitations than those opined.  (AR 25.)  Similarly, the ALJ found the opinions of Drs. M. Morgan and Patricia Heldman—who opined Plaintiff should be limited to simple work with superficial interaction with coworkers and the public—to be persuasive, as largely consistent with Plaintiff's consistent treatment history, including regular counseling and adherence to a psychotropic medication regimen.  (AR 26.)  These medical opinions are in direct conflict with Plaintiff's allegations of completely debilitating impairments.  Yet Plaintiff has not challenged the ALJ's evaluation of the medical opinion evidence (thereby waiving this particular issue).  <u>Lewis</u>, 236 F.3d at 517 n.13; <u>Indep. Towers of Wash.</u>, 350 F.3d at 929.  As such, the ALJ's finding that Plaintiff's symptom allegations are inconsistent with the medical opinions constitutes an additional clear and convincing reason for rejecting her subjective testimony.  <u>Hairston</u>, 827 Fed. App'x at 773; <u>Carmickle</u>, 533 F.3d at 1160; <u>Woods I</u>, 2022 WL 1524772, at *10 n.4.

**e.      Plaintiff's Remaining Arguments**

A plain reading of the ALJ's opinion reveals Plaintiff's remaining arguments are unavailing.  For example, Plaintiff argues the ALJ did not identify any specific portions of her testimony as not credible and therefore "did not link that testimony to the particular parts of the record supporting the non-credibility determination."  (ECF No. 14 at 11–12.)  This assertion is belied at multiple points in the ALJ's decision.  At one point, the ALJ identified Plaintiff's allegation that she needs reminders to take medication and has problems with memory, then determined this allegation was inconsistent with mental status reports showing no serious deficits

in long-term memory, short-term memory, insight or judgment.  (AR 21.)  At another point in his decision, the ALJ identified Plaintiff's allegation that she has difficultly getting along with others, then determined this allegation was inconsistent with medical notes showing Plaintiff interacted normally with her treating practitioners and was observed to be pleasant, cooperative, and in no distress; and that she socialized with her family, thus indicating an ability to maintain relationships with others.  (Id.)

Plaintiff also argues the ALJ's statement that Plaintiff's testimony is not entirely consistent with the other evidence in the record is "too vague" to suffice.  (ECF No. 14 at 11–12.)  This argument appears to take the ALJ's introductory sentence out of context while failing to acknowledge the detailed discussion of medical and non-medical evidence that follows it.

Finally, Plaintiff disputes the ALJ's finding that she responded to treatment and was stable after implantation of the spinal cord stimulator.  (Id. at 13–14.)  However, to the extent Plaintiff argues the ALJ's conclusion based on his review of these records is incorrect, it appears Plaintiff merely seeks to advance an alternative interpretation of the evidence; this is not a basis to disturb the ALJ's rational interpretation of the evidence.  Burch, 400 F.3d at 680–81 (citing Magallanes v. Bowen, 881 F.2d 747, 749 (9th Cir. 1989)) ("[w]e must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); Rollins, 261 F.3d at 853 ("It is true that Rollins' testimony was somewhat equivocal about how regularly she was able to keep up with all of these activities, and the ALJ's interpretation of her testimony may not be the only reasonable one.  But it is still a reasonable interpretation and is supported by substantial evidence; thus, it is not our role to second-guess it.").  Here, the ALJ considered Plaintiff's medical records, including her follow up appointments after implantation of the spinal stimulator, at which time Plaintiff reported she was "exceptionally pleased" with her post-operative results, and stated she had "complete resolution" of preoperative back and lower extremity radicular pain; physical examinations showing a well-healed midline thoracic incision, full upper and lower extremity strength, observation of normal gait, and no focal motor deficits or positive straight leg raise testing.  (AR 23 (citing AR 564, 566, 569).)  The Court cannot say the ALJ's interpretation of the medical record is unreasonable.

In sum, the ALJ has sufficiently identified multiple clear and convincing reasons in support of his determination that Plaintiff's treatment is inconsistent with the severity of her alleged symptoms.  Burrell v. Colvin, 775 F.3d 1133, 1136 (9th Cir. 2014); S.S.R. 16-3p at *10. While Plaintiff may have suggested an alternative interpretation of the evidence, this is not sufficient to establish reversible error.  See Ford, 950 F.3d at 1154; Burch, 400 F.3d at 679 (citations omitted).  Accordingly, the Court finds the ALJ provided clear and convincing reasons supported by substantial evidence for discounting Plaintiff's symptom testimony.

### B.     Lay Witness Testimony

As noted in her briefing, Plaintiff's close friend, Leah Sharp, submitted a third-party functionality statement.  (AR 470–78.)  Plaintiff argues the ALJ not only failed to give germane reasons for rejecting the lay testimony, but also his decision does not indicate he considered the lay testimony at all, thus constituting reversible error.  (ECF No. 14 at 19–22.)

### 1.     Legal Standard

The Ninth Circuit has held that "[l]ay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so."  Tobeler v. Colvin, 749 F.3d 830, 832 (9th Cir. 2014) (citations omitted); see also Molina, 674 F.3d at 1111.  In giving "germane reasons" for disregarding a lay witness's testimony, the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."  20 C.F.R. §§ 404.1527(f)(2), 416.927(f)(2) (standard for evaluating opinion evidence for claims filed before Mar. 27, 2017); see also Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (germane reasons must be specific).

Nevertheless, even if the ALJ fails to provide germane reasons for rejecting lay witness testimony, such error is harmless "when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination."  Tommasetti, 533 F.3d at 1038. More specifically, the Ninth Circuit has held an ALJ's error in failing to explain his reasons for

disregarding lay testimony is harmless where the reasons for rejecting a claimant's symptom testimony apply equally to third-party lay witness testimony.  Molina, 674 F.3d at 1115; see also Valentine, 574 F.3d at 694 (ALJ's valid reasons for rejecting claimant's testimony were equally germane to similar lay testimony); Lewis, 236 F.3d at 512 (stating that the ALJ "noted arguably germane reasons for dismissing the [lay] testimony, even if he did not clearly link his determination to those reasons"); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (approving ALJ's dismissal of daughters' lay testimony on the basis that they were merely repeating the claimant's statements, where daughters' statements did not explain sufficiently when and to what extent they had the opportunity to observe their mother); cf. Stout, 454 F.3d at 1055–56 (explaining "where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.")  As the Court previously noted, Plaintiff bears the burden of showing that the error is not harmless.  Shinseki, 556 U.S. at 409.

2.    Analysis

Here, Defendant does not dispute the ALJ did not provide "germane reasons" (or any reasons) for rejecting Ms. Sharp's statement.  Instead, Defendant argues the Ninth Circuit's "germane reasons" and harmless error standards were developed under the prior regulatory scheme; therefore, Plaintiff's reliance on this standard is misplaced.  (ECF No. 16 at 9–10, 12–13.)  Indeed, Defendant argues the new regulations demonstrate ALJs are "not require[d] … to address lay witness evidence in their decisions."  (Id. at 9–10.)  In essence, Defendant appears to argue the new regulatory framework has entirely "superseded" the Ninth Circuit's "germane reasons" requirement.

To this point, the Court finds the Ninth Circuit's reasoning in Woods v. Kijakazi (Woods II), 32 F.4th 785, 788–92 (9th Cir. 2022), to be particularly instructive.  In Woods v. Kijakazi, the Ninth Circuit explained how it previously relied on the Supreme Court's decision in Nat'l Cable & Telecomm's Ass'n v. Brand X Internet Servs. (Brand X), 545 U.S. 967 (2005), to accord Chevron deference to the SSA's authoritative interpretation of the 1984 Reform Act as precluding

1    any presumption of continuing disability, thus overturning the court's prior precedents on the

2    issue of a presumption of continuing disability.  Id. at 790 (citing Lambert, 980 F.3d at 1273–76

3    ("On various occasions, we have relied on the principle of Brand X to recognize that an agency's

4    intervening interpretation of a statute commanded deference in the face of a contrary circuit

5    precedent.")); see also Brand X, 545 U.S. at 982 (holding "[a] court's prior judicial construction

6    of a statute trumps an agency construction otherwise entitled to Chevron deference only if the

7    prior court decision hold that its construction follows from the unambiguous terms of the statute

8    and thus leaves no room for agency discretion."); Chevron, U.S.A. v. Nat. Res. Def. Council, Inc.,

9    467 U.S. 837 (1984).

10       Applying this reasoning to the more recent issue of whether the medical opinion hierarchy

11   under the "treating physician rule" survived the revised regulations, the Ninth Circuit

12   unambiguously acknowledged that the 2017 revised Social Security regulations abrogate prior

13   precedents requiring an ALJ to provide "specific and legitimate reasons supported by substantial

14   evidence in the record" for rejecting the opinion of a treating physician, as applied to Social

15   Security claims filed after March 27, 2017.  Woods II, 32 4th at 788.  However, even though the

16   Ninth Circuit determined the "specific and legitimate" standard, "which stems from the special

17   weight given to [treating or examining doctor's opinions is] … irreconcilable with the 2017

18   regulations," it nevertheless cautioned that "[e]ven under the new regulations, an ALJ cannot

19   reject an examining or treating doctor's opinion as unsupported or inconsistent without providing

20   an explanation supported by substantial evidence."  Id. at 792.  Thus, "the extent of the claimant's

21   relationship with the medical provider … remains relevant under the new regulations."  Id.

22       Similarly, the "germane reasons" standard at issue in the instant case pre-dates the revised

23   regulations and is likely superseded by the 2017 regulatory framework, but only to the extent it is

24   contradicted by the plain language of the new regulatory framework.

25       The new regulatory framework, which applies to claims filed, as here, after March 27,

26   2017, identifies five categories of evidence: (1) objective evidence; (2) medical opinions; (3)

27   "other" medical evidence; (4) evidence from nonmedical sources; and (5) prior administrative

28   medical findings.  20 C.F.R. § 416.913(a)(1)–(5).  Regulation 416.920c describes how the ALJ is

required to consider and articulate medical opinions and prior administrative medical findings. However, with respect to evidence from nonmedical sources—the category under which Plaintiff's lay testimony falls—the revised regulations expressly provide that the agency is "not required to articulate how we considered evidence from nonmedical sources using the requirements [set forth] in paragraphs (a) through (c) in this section." 20 C.F.R. § 416.920c(d). Thus, as Defendant notes, the revised regulations distinguish between evidence the ALJ is required to "consider" and evidence that requires him to "articulate" how he considered that evidence. (See ECF No. 16 at 11.)

Based on a plain reading of the revised regulations, the Court agrees with Defendant that the new regulatory framework requires an ALJ to *consider* lay testimony, but does not necessarily require him to articulate *how* he considered it. Thus, the new regulations do not support a requirement that the ALJ articulate "germane reasons" for rejecting lay witness testimony, but only a requirement that the lay testimony was "considered." Plaintiff's argument that the "failure to articulate any sufficient rationale to reject the lay evidence is grounds for reversal" relies solely on caselaw that predates the revisions. (See, generally, ECF No. 14 at 19–22.) In particular, to the extent she relies on Stout for the holding that lay testimony "cannot be disregarded without comment," Stout, 454 F.3d at 1053, Plaintiff's reliance is misplaced. In fact, six years after its ruing in Stout, the Ninth Circuit expressly rejected a claimant's reliance on Stout for a similar premise, stating "[i]nterpreting *Stout* as creating a rule that the ALJ's failure to expressly reject any facially material lay witness testimony is per se prejudicial would run afoul of our settled rule that we will not reverse for errors that are 'inconsequential to the ultimate nondisability determination.' " Molina, 674 F.3d at 1117.

Furthermore, to the extent the ALJ is required to "consider" lay witness testimony, the Court still reviews for legal error and substantial evidence. As to this requirement, the Court ascertains no contradiction between the new regulations and Ninth Circuit caselaw setting forth the harmless error standard; the new regulations' requirement to "consider" lay witness testimony, in fact, does not significantly differ from the Ninth Circuit's reading of the prior administrative framework:

> The applicable regulations … require the ALJ to <u>consider</u> testimony from family and friends submitted on behalf of the claimant, *see* 20 C.F.R. §§ 404.1529(c)(3), 404.1545(a)(3), but do not require the ALJ to provide express reasons for rejecting testimony from each lay witness, *see id.*; *see also* SSR 06–03p (recognizing that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision").

<u>Molina</u>, 674 F.3d at 1114 (emphasis added).   In <u>Molina</u>, for example, the Ninth Circuit applied the harmless error standard to uphold the ALJ's rejection of lay witness testimony—even though she did not provide any reasons for rejecting it—on the basis that the ALJ's reasons for rejecting the claimant's symptom testimony, which were upheld, were equally relevant to the similar testimony of the lay witness.   <u>Id.</u> at 1114–15.

Applying the aforementioned authorities, the Court finds any error with respect to the ALJ's rejection of the lay testimony was harmless.   Here, as Defendant notes, the statements made by Ms. Sharp were similar to Plaintiff's and offered no new limitations or information not already provided by Plaintiff.   Rather, Ms. Sharp's statements tended to mirror Plaintiff's own allegations, with respect to Plaintiff's claims that her impairments limit her ability to walk, stand or sit for longer than 30 minutes, take care of many household chores, concentrate, complete tasks, or handle stress.   The ALJ states in his decision that he considered all of the evidence (AR 16), which necessarily includes the lay testimony, he discounted Plaintiff's testimony, and reached a finding of nondisabilty.   Because the Court has determined the ALJ provided valid reasons to discount Plaintiff's similar testimony, any error in failing to discuss the reasons for rejecting Ms. Sharp's testimony was harmless.[11]   <u>Molina</u>, 674 F.3d at 1114–15.

Plaintiff, conversely, fails to meet her burden to establish such error was not harmless. <u>Shinseki</u>, 556 U.S. at 409.   The Ninth Circuit explains that "[w]here lay witness testimony does not describe any limitations not already described by the claimant, and the ALJ's well-supported

---

[11] In addition, the Court's independent review of Ms. Sharp's statement reveals it appears rife with opinions as to Plaintiff's diagnoses and limitations—which Ms. Sharp, as a non-physician, is not qualified to make—as well as comments about certain purported limitations (such as Plaintiff's ability to sleep at night) that do not appear to be based upon Ms. Sharp's personal knowledge, and internal inconsistencies (for example, multiple comments that Plaintiff's family do not help her in any manner, but that they do prepare meals, take care of the pets, remind Plaintiff to take medications, etc.; or stating Plaintiff cannot turn a steering wheel because of her carpal tunnel but also that she will drive herself to appointments).

26

reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony, it would be inconsistent with our prior harmless error precedent to deem the ALJ's failure to discuss the lay witness testimony to be prejudicial per se. <u>Molina</u>, 674 F.3d at 1117 (citing <u>Valentine</u>, 574 F.3d at 694; <u>Lewis</u>, 236 F.3d at 512). Here, however, Plaintiff does not identify any portion of the lay testimony that was not already described by Plaintiff, nor does she present any argument that the ALJ's reasons for rejecting Plaintiff's testimony are inapplicable to any portion of Ms. Sharp's testimony. To the contrary, other than noting the existence of this third-party statement and asserting the ALJ failed to consider it, Plaintiff herself does not describe or discuss the content or merits of Ms. Sharp's statement at any point in her briefing whatsoever. Thus, Plaintiff provides no substantive argument as to whether Ms. Sharp's "personal observations of [Plaintiff's] symptoms and limitations arising from her severe medical impairments" (ECF No. 14 at 20–21) were improperly rejected. Rather, at most, Plaintiff asserts in conclusory fashion that Ms. Sharp's "descriptions of [Plaintiff's] limited functional ability … are consistent with [Plaintiff's] application for disability benefits." (<u>Id.</u> at 20.) These conclusory statements, without more, are insufficient to establish reversible error.

## VI.

## CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that:

1.    Plaintiff's appeal from the decision of the Commissioner of Social Security (ECF No. 14) is DENIED; and

///

///

///

///

///

///

///

///

2.      The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Commissioner of Social Security and against Plaintiff Patricia Jane Schilling and close this case.

IT IS SO ORDERED.

Dated:   **December 2, 2022**

_____
UNITED STATES MAGISTRATE JUDGE